# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF NORCO MANUFACTURING CORP.,**

    Plaintiff,

    v.                                                                                 Case No. 24-CV-298-SCD

**CORE TECH INTERNATIONAL CORPORATION,**
**ZURICH AMERICAN INSURANCE COMPANY,**
**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA.,**
**AMERICAN HOME ASSURANCE COMPANY,** and
**THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,**

    Defendants.

---

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

---

This case involves a contract dispute between Norco Manufacturing Corp., a Wisconsin company, and Core Tech International Corporation, a company located in Guam. After being awarded a contract for a project at the U.S. Air Force base in Guam, Core Tech subcontracted with Norco to provide hangar doors for the project. Norco designed and manufactured the hangar doors in Wisconsin and delivered them to Guam for installation, but they stopped working shortly after being installed and had to be fixed. When Core Tech refused to pay Norco for the redesign work—insisting that it was all Norco's fault—Norco filed suit in Wisconsin federal court against Core Tech and several of the insurance companies that provided bonds for the government project.

Core Tech has moved to dismiss the contract claims for lack of personal jurisdiction, and the insurance companies have moved to dismiss the bond claim for improper venue.

Alternatively, the defendants seek to transfer this case to the District Court of Guam. Because Norco has satisfied its burden of making a prima facie showing of the existence of personal jurisdiction over Core Tech in Wisconsin, I will deny Core Tech's motion to dismiss. However, the bond claim is not properly venued here, and the interests of justice favor keeping Norco's claims together. I will therefore transfer this entire action to Guam.

## BACKGROUND

In 2014, Core Tech-AMEC JV[1] was selected as the contractor for a project at the Andersen Air Force Base in Guam. *See* Am. Compl. ¶¶ 3–4, 17, ECF No. 22; Bathan Decl. ¶ 2. Core Tech obtained payment bonds for the contract, as required by the Miller Act, 40 U.S.C. §§ 3131–3134. Am. Compl. ¶¶ 10, 18. The project called for blast resistant aircraft hangar doors, so Core Tech solicited bids from several hangar door manufacturing companies, including one located in Franksville, Wisconsin: Norco Manufacturing Corp. (which does business as Norco Industrial Doors). *Id.* ¶¶ 1, 19; Dandridge Decl. ¶¶ 3–6, ECF No. 26; Eberle Decl. ¶¶ 3–5, ECF No. 34. Core Tech selected Norco's bid. Am. Compl. ¶ 20. For over $5 million, Norco agreed to design, manufacture, and blast test the hangar doors; deliver the doors to Guam; and supervise the installation process. *Id.* ¶¶ 20–21; *see also* Am. Compl. Ex. A, ECF No. 22-1; Bathan Decl. Ex. 2, ECF No. 25 at 8–15. No Core Tech employees went to Wisconsin to solicit the bid, negotiate the terms, or execute the subcontract; the parties communicated via email and signed the subcontract remotely in March 2015. Dandridge Decl. ¶¶ 5–10.

---

[1] Core Tech International Corporation is the successor interest to Core Tech-AMEC-SKEC, LLC, an incorporated joint venture called Core-Tech-AMEC JV. *See* Bathan Decl. ¶ 2, ECF No. 25.

Norco completed all the detailing and fabrication work at its Wisconsin facility and delivered the finished doors to Guam for installation. Am. Compl. ¶¶ 22–23; *see also* Eberle Decl. ¶¶ 6–7. Shortly after installation, the government informed Core Tech that the doors weren't operating properly. *See* Bathan Decl. Ex. 3, ECF No. 25 at 16–18. The government requested a remediation plan and reminded Core Tech about the stiff financial penalties for not timely completing the project.

Although Core Tech and Norco disagree on the root cause of the malfunctioning door system—with each side blaming the other—they agreed to work together on a solution. *See* Am. Compl. ¶¶ 23, 25–29; Bathan Decl. ¶¶ 5–10; Eberle Decl. ¶¶ 9–14; Calderon Decl. ¶¶ 3–7, ECF No. 33. After several conference calls, in December 2021 representatives from both parties met in person at Norco's office in Wisconsin. The full-day meeting focused on the goals and approach to door redesign, on-site observations regarding the door system failure, and discussions regarding components of the door system that needed to be reviewed and redesigned to repair the hangar doors. *See* Bathan Decl. Ex. 4, ECF No. 25 at 19–20. Following the meeting, Core Tech sent the government a plan of action indicating that the company was working with Norco on the redesign. Bathan Decl. Ex. 5, ECF No. 25 at 21–23.

Norco completed the redesign work, shipped the new parts to Guam, and had its project manager oversee the installation of the redesigned door system at the project site on Guam. *See* Am Compl. ¶¶ 31–36, 38; Eberle Decl. ¶¶ 8, 16–19; Bathan Decl. ¶ 11. Norco also invoiced Core Tech for the redesign work, but Core Tech failed to pay the remaining balance of nearly $1 million. Am. Compl. ¶¶ 39–47. Eberle Decl. ¶ 20; Calderone Decl. ¶¶ 8–9. Aside

3

from the December 2021 meeting and the project manager's visits[2] to Guam, the parties communicated exclusively by email, phone, or video conferencing. Bathan Decl. ¶¶ 11–13.

In March 2024, Norco filed suit in the Eastern District of Wisconsin against Core Tech and several of the insurance companies that issued the payment bonds on the project. Compl., ECF No. 1. The matter was reassigned to this court after all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* Consent Forms, ECF Nos. 5, 8; Reassignment Order, ECF No. 9. Norco later filed an amended complaint asserting claims for breach of contract, quantum meruit, promissory estoppel, and unjust enrichment against Core Tech and a Miller Act payment bond claim against the sureties. Am. Compl. ¶¶ 52–86.[3] On May 23, 2024, the defendants moved to dismiss the entire lawsuit. *See* Defs.' Mot., ECF No. 24; Defs.' Mem., ECF No. 28. That motion is fully briefed and ready for resolution. *See* Pl.'s Resp., ECF No. 32; Defs.' Reply, ECF No. 35; Pl.'s Sur-Reply, ECF No. 40.

## DISCUSSION

Core Tech moves to dismiss the contract claims (Counts I, III, IV, V, and VI) for lack of personal jurisdiction, *see* Fed. R. Civ. P. 12(b)(2), and the surety defendants move to dismiss the Miller Act claim (Count II) for improper venue, *see* Fed. R. Civ. P. 12(b)(3).

### I. Norco Has Made a Prima Facie Showing of the Existence of Personal Jurisdiction Over Core Tech in Wisconsin

"The plaintiff need not include facts alleging personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure

---

[2] The project manager also visited Guam in June 2021 to fix a different issue with the hangar doors. *See* Bathan Decl. ¶ 11; Eberle Decl. ¶ 8.

[3] The amended complaint also named AMEC Environment & Infrastructure Inc. as a defendant; however, the parties subsequently stipulated to that company's dismissal. *See* Stip., ECF No. 23.

12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). "The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held. When the district court holds an evidentiary hearing to determine jurisdiction, the plaintiff must establish jurisdiction by a preponderance of the evidence." *Purdue Research*, 338 F.3d at 782 (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). "However, when the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, . . . the plaintiff 'need only make out a *prima facie* case of personal jurisdiction.'" *Id.* (quoting *Hyatt*, 302 F.3d at 713). "When affidavits regarding the issue of personal jurisdiction are submitted, the district court may weigh the affidavits." *Curry*, 949 F.3d at 393. "'In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Purdue Research*, 338 F.3d at 782 (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

"Federal courts sitting in diversity must apply the personal jurisdiction rules of the forum state." *Webber v. Armslist LLC*, 70 F.4th 945, 953 (7th Cir. 2023) (citing *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015)). Here, that's Wisconsin. "A federal court sitting in Wisconsin may exercise jurisdiction only if it comports with Wisconsin's long-arm statute, Wis. Stat. § 801.05, and Fourteenth Amendment due process." *Id.* (citing *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012)). Core Tech does not contest jurisdiction under Wisconsin's long-arm statute. *See* Defs.' Mem. 7 n.3. Thus, the issue in this case is whether exercising jurisdiction over Core Tech in Wisconsin comports with due process.

5

"For a court to exercise personal jurisdiction over an out-of-state defendant, the key issue for constitutional purposes is whether the defendant has sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Felland*, 682 F.3d at 672–73 (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010)). "Each defendant must have 'purposely established minimum contacts with the forum state such that he or she should reasonably anticipate being haled into court there.'" *Id.* at 673 (quoting *Tamburo*, 601 F.3d at 701). However, "a defendant's physical presence within the state is not required." *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (citing *Walden v Fiore*, 571 U.S. 277, 283 (2014)).

Because Norco and Core Tech agree that the facts do not support general jurisdiction, *see* Defs.'s Mem. 7 n.4; Pl.'s Resp. 6 n.4, only specific jurisdiction is at issue here. "Specific personal jurisdiction rests on 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *B.D. ex rel. Myers v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 861 (7th Cir. 2024) (quoting *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017)). Specific personal jurisdiction is appropriate where (1) the defendant has "purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum"; (2) "the alleged injury . . . arise[s] out of or relate[s] to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction . . . comport[s] with traditional notions of fair play and substantial justice." *Id.* (citing *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021); *Tamburo*, 601 F.3d at 702).

### A. Purposeful direction or availment

To determine whether a defendant has purposefully directed its activities at the forum state or availed itself of the privilege of conducting business in the forum state, courts consider "whether the defendant has deliberately engaged in significant activities within the forum state . . . or whether it has created continuing obligations between itself and a resident of the forum." *Purdue Research*, 338 F.3d at 780–81. "[T]his analysis focuses on 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Lexington Ins. Co.*, 938 F.3d at 879 (quoting *Walden*, 571 U.S. at 285). "[A] contract with a forum resident is not enough, standing alone, to establish jurisdiction in that forum." *Id.* at 880 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). "Instead, [courts] conduct a context-sensitive analysis of the contract, examining 'prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other.'" *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 493 (7th Cir. 2014) (quoting *Purdue Research*, 338 F.3d at 781).

Norco argues that Core Tech purposefully availed itself of the privilege of conducting business in Wisconsin when it solicited Norco to design and manufacture the blast resistant hangar doors. Norco notes that Core Tech initiated the relationship when it first solicited the bid in February 2015. Norco also notes that Core Tech contracted with Norco knowing that Norco had executed the subcontract in Wisconsin and would perform the required work there, which the company did; Norco says its work was performed almost exclusively in Wisconsin. Norco further points out that Core Tech representatives traveled over 7,000 miles to Wisconsin in December 2021 to discuss the redesign work and thereafter kept in contact with Norco via

email, telephone, and video conferencing software. Finally, Norco observes that Core Tech refused to pay for the work its representatives solicited in Wisconsin.

Core Tech does not dispute its contacts with Wisconsin, but rather argues those limited contacts are not enough to establish jurisdiction over the company here when viewing the business transaction as a whole. Core Tech accurately notes that its contract with Norco, a Wisconsin company, does not automatically satisfy specific jurisdiction. Core Tech also notes that, while the company initiated the transaction, it did so via email; no one from Core Tech visited Wisconsin to solicit the bid, negotiate the terms, or execute the subcontract. Furthermore, according to Core Tech, the place of performance of the subcontract was Guam, as it required Norco to deliver the finished hangar doors to the island for use in a project there, and the subcontract was governed by Guam law. Core Tech also insists that the December 2021 meeting in Wisconsin should not count as a forum contact because the meeting was necessitated by Norco's faulty work.

The undisputed facts demonstrate that Core Tech reached out to Wisconsin during the formation and execution of the hangar door subcontract.

First, Core Tech purposefully targeted a Wisconsin company for its business when it solicited a bid from Norco via email. *See Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1218 (7th Cir. 1990) (finding that the defendant purposefully availed itself of the benefits of conducting business in Wisconsin when it solicited the services of a forum plaintiff); *Madison Consult. Grp. v. South Carolina.*, 752 F.2d 1193, 1202 (7th Cir. 1985) ("The question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction."); *Shared Med. Equip. Grp., LLC v. Simi Valley Hosp. & Healthcare Servs.*, 3 F. Supp. 3d 735, 742–43

(W.D. Wis. 2014) (finding personal jurisdiction where the non-resident defendant initiated the business transaction with the forum plaintiff).[4]

Second, although nothing *required* performance in Wisconsin, Core Tech entered into a "time is of the essence" contract knowing that Norco would perform the bulk of its work here, *see* Ex. A, at 2, Norco did in fact perform its obligations almost exclusively in Wisconsin, and that contract is the focus of this litigation. *See Kanner*, 913 F.2d at 1219 ("Although not dispositive, the fact that a plaintiff performs a substantial amount of a contract in the forum state constitutes another meaningful contact between the defendant and the forum."); *Madison Consult.*, 752 F.2d at 1204 (finding plaintiff's performance of the contract in the forum state relevant where "Defendants . . . entered into a time of the essence contract that contemplated performance in the forum, the contract was in fact performed in the forum, and the contract is the focus of this litigation brought in the forum").

Third, throughout the duration of the subcontract—which lasted several years—Core Tech regularly communicated with Norco's Wisconsin office via email, telephone, and video conferencing.[5] *See Burger King*, 471 U.S. at 480–81 (finding personal jurisdiction in Florida appropriate in part because the defendant "carried on a continuous course of direct communications by mail and by telephone" with the plaintiff's Miami office).

Finally, Core Tech representatives traveled to Wisconsin for a full-day meeting to discuss the parties' redesign efforts. *See Wis. Elect. Mfg. Co., Inc. v. Pennant Prods., Inc.*, 619 F.2d 676, 678 (7th Cir. 1980) (finding defendant's visits to the forum state sufficient to confer

---

[4] The active solicitation by Core Tech distinguishes our case from *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026 (5th Cir. 1983), a case Core Tech heavily relies upon in its reply brief. *See* Defs.' Reply 3–4.

[5] Although time was of the essence, the project was delayed by COVID-19 and other factors. *See* Bathan Decl. ¶ 5.

personal jurisdiction there if the visits are significant in the defendant's "efforts to have [the contract] satisfactorily performed"). Together these facts sufficiently demonstrate that Core Tech purposefully directed its activities at Wisconsin and purposefully availed itself of the privilege of conducting business here.

Core Tech relies primarily on *Jadair, Inc. v. Walt Keeler Co., Inc.* to support its argument that the company's visit to Wisconsin should be excluded from the purposeful direction/availment analysis. *Jadair* involved a contract dispute between two corporations—one from Wisconsin (Jadair), the other Kansas (Keeler). *Jadair, Inc. v. Walt Keeler Co., Inc.*, 679 F.2d 131, 131–32 (7th Cir. 1982). On appeal, the Seventh Circuit determined that the Wisconsin courts did not have personal jurisdiction over Keeler because its "only connection with Wisconsin was ordering a machine from a manufacturer headquartered there." *Id.* at 134. The court noted that "Keeler personnel never visited Jadair's plant . . . in Wisconsin" and that "[a]ll face-to-face meetings between Keeler and Jadair occurred in Wichita." *Id.* The court further noted that Keeler's telephone calls and letters were not jurisdictionally significant because they were "all attempts by Keeler to get Jadair to repair the malfunctioning machine. If selling the machine to a Kansas buyer is not sufficient to warrant bringing him into a Wisconsin court, Keeler's later efforts to get the machine to work properly cannot add anything to the calculations." *Id.*

*Jadair* does not compel me to find that purposeful direction or availment is lacking in this case. Unlike the non-resident defendant in *Jadair*, Core Tech deliberately reached into Wisconsin to solicit business from a Wisconsin company, and Core Tech personnel visited the plaintiff's facility for a face-to-face meeting in the forum state. *Jadair* did not hold that a defendant's physical presence in the forum is jurisdictionally irrelevant if related to efforts to

10

address a defect in the plaintiff's product, and Core Tech cites no other controlling or persuasive authority on point. Indeed, in *Pennant Products*—a case the *Jadair* court cited with approval, 679 F.2d at 134 n.10—the Seventh Circuit held that a defendant's visit to the forum state is jurisdictionally relevant when the visit is significant in the defendant's efforts to have the contract satisfactorily performed. *Pennant Prods.*, 619 F.2d at 677–78. Core Tech disputes only which party is at fault for the malfunctioning door system, not the nature and purpose of the Wisconsin meeting or its significance to the performance of the subcontract.[6] Because the underlying cause appears immaterial to the jurisdictional analysis, an evidentiary hearing is not needed to resolve that dispute now. Also, because the parties' dispute is significantly intertwined with the merits of Norco's contract claims, an evidentiary hearing would be inappropriate in this case.

### B. Relatedness

To exercise personal jurisdiction over Core Tech in Wisconsin, Norco must also show that its alleged injury arose out of or relates to Core Tech's forum-related activities. *See B.D.*, 91 F.4th at 861–62. It is undisputed that Core Tech's contacts with Wisconsin are suit-related. Core Tech solicited a bid from a Wisconsin company to design, manufacture, and deliver to Guam blast resistant hangar doors, traveled to Wisconsin to discuss redesign work relating to the hangar doors, and regularly communicated with Norco at its Wisconsin office. Norco alleges that Core Tech breached the subcontract when it refused to pay for the redesign work. Core Tech's contacts with Wisconsin are therefore central to Norco's contract claims. Indeed, even Core Tech concedes that the relatedness prong hinges on the purposeful direction/availment prong. *See* Defs.' Reply 2 n.2.

---

[6] The agenda for the meeting did not mention warranty work or design defects. *See* Ex. 4.

C.  Fairness

Finally, the court must consider whether exercising personal jurisdiction over Core Tech in Wisconsin comports with "traditional notions of fair play and substantial justice." *B.D.*, 91 F.4th at 861. In making this determination, courts consider "several factors, including the burden on the defendant, the interests of the plaintiff and the forum state, the interest in efficient resolution of the dispute, and the shared interest of states in furthering certain substantive social policy." *Id.* at 862 (citing *Burger King*, 471 U.S. at 477).

Applying those factors, I see no unfairness in permitting this suit to proceed in Wisconsin. Although litigating in Guam may be more convenient for Core Tech, the burden of requiring the company to defend this suit here is minimal. In this age—with electronic discovery, video conferencing, and the near disappearance of civil trials—it's unlikely that Core Tech will ever have to step foot in Wisconsin during the duration of this case. Moreover, Wisconsin has a strong interest in providing a forum to its residents to seek redress for harm suffered in the state by out-of-state actors. And, to the extent Core Tech insists that Norco's design defects caused the hangar door system to fail, it seems much of the physical evidence would be located in Wisconsin, as that's where Norco completed nearly all the design and manufacturing work. There is no compelling reason to assume that resolving this dispute in Wisconsin would be constitutionally unfair to Core Tech.

\*    \*    \*

In sum, Norco has established a prima facie case for personal jurisdiction over Core Tech in Wisconsin. The parties agree that jurisdiction is proper under the state's long-arm statute, and Norco has shown that exercising jurisdiction over Core Tech in this court would comport with the requirements of the Due Process Clause. Core Tech should have reasonably

anticipated being haled into court in Wisconsin when it failed to pay a Wisconsin company for work relating to a contract that Core Tech solicited in this state and that was largely performed here. Accordingly, I will deny Core Tech's motion to dismiss for lack of personal jurisdiction.

## II. Wisconsin Is Not the Proper Venue for Norco's Miller Act Claim

"The Miller Act requires contractors working on federal construction projects to post performance and payment bonds for the protection of the United States and persons furnishing labor or material." *United States ex rel. Owens-Corning Fiberglass Corp. v. Brandt Constr. Co.*, 826 F.2d 643, 646 n.4 (7th Cir. 1987); *see also* 40 U.S.C. § 3131. "[S]ubcontractors and suppliers who are not paid for their work may sue in the name of the United States for the amount secured by the payment bond." *Id.* Here, Norco asserts a Miller Act payment bond claim against several of the insurance companies that issued the bonds for the project at the Andersen Air Force Base. The surety defendants seek dismissal of that claim, arguing that venue is not proper in Wisconsin.

The Miller Act's venue provision requires any action to be brought "in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." 40 U.S.C. § 3133(b)(3)(B). Core Tech argues that this statutory language requires the suit to be brought in the district where the government project site is located—here, Guam. Although most courts appear to have adopted that narrow reading of the Act's venue provision, *see, e.g.*, *Chowns Grp., LLC v. Liberty Mut. Ins. Co.*, 634 F. Supp. 3d 211, 214–16 (E.D. Pa. 2022) (adopting "the view of the majority and that of our sister districts . . . that the appropriate venue for a Miller Act claim is in the district where the public project's jobsite is located"), the Seventh Circuit has not decided the issue, *see United*

13

*States ex rel. Kountry Wood Prods., LLC v. Ohio Farmers Ins. Co.*, No. 3:12-CV-542-TLS, 2013 WL 550562, 2013 U.S. Dist. LEXIS 20305, at *4 (N.D. Ind. Feb. 12, 2013) (noting that "[t]he Seventh Circuit has not decided a case on point"). Nor has any other federal appellate court.

Nevertheless, Norco has not identified any compelling reason to follow the minority view. Norco asks this court to adopt the reasoning of *Kountry Wood* and hold that the plain meaning of the Miller Act's venue provision supports venue in the Eastern District of Wisconsin because that's where Norco performed most of its work under the subcontract. *Kountry Wood*, however, is not persuasive for several reasons.

First, while the court purported to rely on the "plain meaning of the venue provision," *Kountry Wood*, 2013 U.S. Dist. LEXIS 20305, at *11, the provision's language is far from plain. Courts across the country have struggled interpreting which "contract" is at issue (just the prime contract or any subcontract) and where that contract is "performed" (only at the main site location, where a substantial portion of the work was completed, or where any portion of the contract occurred). *See Chowns*, 634 F. Supp. 3d at 214 ("The statutory language is ambiguous and cannot be construed on its plain reading as being narrow (a single district is proper) or broad (many districts are proper).").

Second, the court concluded that its reading was consistent with the purpose of the Miller Act, but it considered only the general purpose of the Act—to protect contractors and subcontractors from being stiffed on government projects—not the purpose of the venue provision specifically. The Seventh Circuit has not addressed the purpose of the venue provision,[7] and other courts disagree on whether it too should be read charitably to

---

[7] The Seventh Circuit has said, however, that the remedial nature of the Miller Act "does not justify dispensing with requirements stated in the statute or otherwise altering its rules." *United States ex rel. S&G Excavating, Inc. v. Seaboard Sur. Co.*, 236 F.3d 883, 886 (7th Cir. 2001).

subcontractors, *see, e.g.*, *United States ex rel. Brown Minneapolis Tank Co. v. Kinley Constr. Co.*, 816 F. Supp. 2d 1139 (D.N.M. 2011), or whether it was enacted for the benefit of defendants, *see, e.g.*, *United States ex rel. Harvey Gulf Int'l Marine, Inc. v. Md. Cas. Co.*, 573 F.2d 245 (5th Cir. 1978).

Third, *Kountry Wood* is factually distinguishable from our case. The court in *Kountry Woods* determined that, while the project jobsite was in Wisconsin, venue was proper in Indiana because that's where the plaintiff performed all its obligations under the subcontract. *Kountry Wood*, 2013 U.S. Dist. LEXIS 20305, at *9–10. By contrast, the subcontract at issue here required Norco to deliver the finished hangar door system to Guam and to supervise the installation process there. In fact, a good chunk of Norco's alleged damages relate to that on-site support. *See* Am. Compl. ¶ 42; *see also* Am. Compl. Ex. C, ECF No. 22-3; Am. Compl. Ex. F, ECF No. 22-6. Norco therefore didn't perform all its obligations in Wisconsin.

The other cases Norco relies upon to support its broad reading of the venue provision are also unpersuasive. For example, *United States for use and benefit of Expedia, Inc. v. Altex Enterprises, Inc.* involved a government project located in Bermuda, so the court was tasked to find a proper venue in the United States. *United States ex rel. Expedia, Inc. v. Altex Enters, Inc.*, 734 F. Supp. 972, 973–74 (M.D. Fla. 1990). That issue is not presented here. And in *Kudsk v. Bara Infoware, Inc.*, the surety party consented to transferring the action to a district other than where the government project was located. *Kudsk v. Bara Infoware, Inc.*, No. 17-cv-05350-SI, 2019 WL 2775573, 2019 U.S. Dist. LEXIS 110820, at *15–18 (N.D. Cal. July 2, 2019). The surety defendants here, however, do not consent to venue in Wisconsin, and there's no forum selection clause at play.

15

Accordingly, the court adopts the majority view that the appropriate venue for a Miller Act claim is in the district where the government project's jobsite is located. "This ensures that like cases are centralized, provides clear guidance to sureties and subcontractors, and provides a fair venue between the parties in which to litigate." *Chowns*, 634 F. Supp. 3d at 216. Under that view, venue over Norco's Miller Act claim does not lie in the Eastern District of Wisconsin; it belongs in Guam.

### III. Transferring This Action to Guam Is in the Interest of Justice

If venue does not lie in the district in which the case was brought, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Core Tech argues that dismissal is appropriate here because the proper venue for this action is "straightforward and obvious." Defs.' Mem. 20 (citing *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 608 (7th Cir. 2003)). I disagree. Because the reach of the Miller Act's venue provision is far from clear—as shown by the cases cited by the parties—I can't blame Norco for including that claim in this case along with its properly venued contract claims. Put simply, it was not an obvious mistake.

Alternatively, Core Tech argues that the entire action—both the contract claims and the Miller Act claim—should be transferred to the District Court of Guam. Core Tech does not contest joinder. Nevertheless, district courts have discretion, "in the interest of judicial economy and to avoid prejudice," to sever properly joined claims "that are 'discrete and separate.'" *Vermillion v. Levenhagen*, 604 F. App'x 508, 513 (7th Cir. 2015) (quoting *Gaffney v. Riverboat Servs.*, 451 F.3d 424, 442 (7th Cir. 2006)). Properly joined claims are "discrete and separate" only if one claim is "capable of resolution despite the outcome of the other claim." *Gaffney*, 451 F.3d at 442.

16

Assuming that Norco's contract claims and the Miller Act claim are discrete and separate (which I'm not sure they are), severance would not be appropriate in this case. The claims arise out of the same transaction, present some common questions or law and fact, and largely involve the same witnesses and documentary proof. Thus, judicial economy would best be served by keeping the claims together. And neither party has made a strong showing of prejudice. Accordingly, in lieu of dismissal and in the interest of justice, I will transfer this entire action to the District Court of Guam.[8]

## CONCLUSION

Norco has satisfied its burden of making a prima facie showing of the existence of personal jurisdiction over Core Tech in Wisconsin. However, Wisconsin is not the proper venue for Norco's claim against the insurance companies under the Miller Act, and the interests of justice favor keeping Norco's claims together. Accordingly, for all the foregoing reasons, the court **GRANTS in part and DENIES in part** the defendants' motion to dismiss, ECF No. 24. The clerk of court shall transfer this entire case to the District Court of Guam.

**SO ORDERED** this 31st day of July, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge

---

[8] There is no dispute that Norco could have brought all its claims in Guam. *See* § 1406(a).